E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KENNETH R. CARBAJAL (Cal. Bar No. 338079)
JOSEPH S. GUZMAN (Cal. Bar No. 310493)
Assistant United States Attorneys
General Crimes Section
     1200/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3172 / 2438
     Facsimile: (213) 894-0141
     E-mail:   Kenneth.Carbajal@usdoj.gov
               Joseph.Guzman2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-229-DSF |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:   May 7, 2024<br>Trial Time:   8:30 a.m. |
| KEITH LAWRENCE MIDDLEBROOK, | Location:     Courtroom of the<br>Hon. Dale S. |
| Defendants. | Fischer |

     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Kenneth R. Carbajal
and Joseph S. Guzman, hereby files its Trial Memorandum.

//
//
//
//
//

The government respectfully reserves the right to supplement or modify this memorandum as may be appropriate.

Dated: April 30, 2024                    Respectfully submitted,

                                         E. MARTIN ESTRADA
                                         United States Attorney

                                         MACK E. JENKINS
                                         Assistant United States Attorney
                                         Chief, CRIMINAL Division

                                               /s/
                                         _____
                                         KENNETH R. CARBAJAL
                                         JOSEPH S. GUZMAN
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

TABLE OF CONTENTS

DESCRIPTION                                                          PAGE

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   STATUS OF CASE................................................1

      A.    Indictment..............................................1

      B.    Discovery...............................................1

      C.    Trial...................................................2

      D.    Defendant...............................................2

      E.    Government Witnesses....................................2

      F.    Pretrial Motions........................................2

III.  ELEMENTS OF THE CHARGED OFFENSES.............................4

IV.   STATEMENT OF FACTS............................................7

V.    LEGAL AND EVIDENTIARY ISSUES..................................8

      A.    Authentication and Foundation...........................8

      B.    Expert Opinion Testimony................................8

      C.    Lay Law Enforcement Testimony...........................9

      D.    Defendant's Statements.................................11

      E.    Cross-Examination of Defendant.........................12

      F.    Recordings, Photographic Evidence, and Transcripts.....13

      G.    Character Evidence.....................................15

      H.    Business Records.......................................17

      I.    Use of Exhibits During Opening Statement...............17

      J.    Summary Witnesses......................................17

      K.    Calling Witnesses For Impeachment......................18

      L.    Affirmative Defenses...................................20

      M.    Jury Nullification.....................................20

      N.    Reciprocal Discovery...................................20

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE

VI.  CONCLUSION...................................................21

**TABLE OF AUTHORITIES**

Page(s)

Other Authorities

Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co.,
  466 F.2d 722 (7th Cir. 1972) ..................................... 18
Hamling v. United States,
  418 U.S. 87 (1974) ............................................. 15
Lucero v. Stewart,
  892 F.2d 52 (9th Cir. 1989) ..................................... 13
Michelson v. United States,
  335 U.S. 469 (1948) ......................................... 15, 16
Ohler v. United States,
  529 U.S. 753 (2000) ............................................ 12
Territory of Guam v. Ojeda,
  758 F.2d 403 (9th Cir. 1985) ................................... 11
United States v. Andersson,
  813 F.2d 1450 (9th Cir. 1987) ................................... 9
United States v. Barragan,
  871 F.3d 689 (9th Cir. 2017) ................................... 10
United States v. Black,
  767 F.2d 1334 (9th Cir. 1985) .................................. 12
United States v. Bright,
  588 F.2d 504 (5th Cir. 1979) ................................... 16
United States v. Chu Kong Yin,
  935 F.2d 990 (9th Cir. 1991) .................................... 8
United States v. Collicott,
  92 F.3d 973 (9th Cir. 1996) .................................... 12
United States v. Cuozzo,
  962 F.2d 945 (9th Cir. 1992) ................................... 12
United States v. De Peri,
  778 F.2d 963 (3d Cir. 1985) .................................... 17
United States v. Gadson,
  763 F.3d 1189 (9th Cir. 2014) ................................ 8, 10
United States v. Garlick,
  240 F.3d 789 (9th Cir. 2001) .................................... 6
United States v. Halbert,
  640 F.2d 1000 (9th Cir. 1981) ................................... 5
United States v. Hedgcorth,
  873 F.2d 1307 (9th Cir. 1989) .................................. 16
United States v. Jimenez-Chaidez,
  96 F.4th 1257 (9th Cir. 2024) ................................. 10
United States v. Jinian,
  725 F.3d 954 (9th Cir. 2013) ................................. 5, 6
United States v. King,

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

    587 F.2d 956 (9th Cir. 1978) .................................... 13
<u>United States v. Lemire</u>,
    720 F.2d 1327 (D.C. Cir. 1983) ................................. 17
<u>United States v. Lindsey</u>,
    850 F.3d 1009 (9th Cir. 2017) ................................... 5
<u>United States v. Marin</u>,
    669 F.2d 73 (2d Cir. 1982) ..................................... 12
<u>United States v. McCollom</u>,
    664 F.2d 56 (5th Cir. 1981) .................................... 16
<u>United States v. Milheiser</u>,
    --- F.4th ----, 2024 WL 1517377 (9th Cir. Apr. 9, 2024) ........ 6, 8
<u>United States v. Miranda-Uriarte</u>,
    649 F.2d 1345 (9th Cir. 1981) .................................. 12
<u>United States v. Moreno</u>,
    243 F.3d 551 (9th Cir. 2000) ................................... 10
<u>United States v. Oaxaca</u>,
    569 F.2d 518 (9th Cir. 1978) ................................... 13
<u>United States v. Ortega</u>,
    203 F.3d 675 (9th Cir. 2000) ................................... 11
<u>United States v. Pino-Noriega</u>,
    189 F.3d 1089 (9th Cir. 1999) .................................. 10
<u>United States v. Powell</u>,
    955 F.2d 1206 (9th Cir. 1992) .................................. 18
<u>United States v. Rubino</u>,
    431 F.2d 284 (6th Cir. 1970) ................................... 17
<u>United States v. Rude</u>,
    88 F.3d 1538 (9th Cir. 1996) .................................... 5
<u>United States v. Santana-Camacho</u>,
    931 F.2d 966 (1st Cir. 1991) ................................... 15
<u>United States v. Shirley</u>,
    884 F.2d 1130 (9th Cir. 1989) .................................. 17
<u>United States v. Soulard</u>,
    730 F.2d 1292 (9th Cir. 1984) .................................. 18
<u>United States v. Stearns</u>,
    550 F.2d 1167 (9th Cir. 1977) .................................. 13
<u>United States v. Turner</u>,
    528 F.2d 143 (9th Cir. 1975) ................................... 14
<u>United States v. VonWillie</u>,
    59 F.3d 922 (9th Cir. 1995) .................................... 10
<u>United States v. Warren</u>,
    25 F.3d 890 (9th Cir. 1994) .................................... 11
<u>United States v. Willis</u>,
    759 F.2d 1486 (11th Cir. 1985) ................................. 11
<u>United States v. Young</u>,
    248 F.3d 260 (4th Cir. 2001) ................................... 19

ii

## **TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

Zal v. Steppe,
    968 F.2d 924 (9th Cir. 1992) ....................................18

**Statutes**

18 U.S.C. § 1343...............................................1, 6

**Rules**

F.R.E. 615(3)......................................................4
F.R.E. 607........................................................18
Fed. R. Crim. P. 16(b)(1).........................................19
Fed. R. Crim. P. 16(c)............................................19
Fed. R. Crim. P. 16(d)(2)(C)......................................19
Fed. R. Evid. 106.................................................11
Fed. R. Evid. 405(a)..............................................16
Fed. R. Evid. 608(a)..............................................16
Fed. R. Evid. 702..................................................8
Fed. R. Evid. 703..................................................9
Fed. R. Evid. 801(d)(2)...........................................11
Fed. R. Evid. 801(d)(2)(A)........................................11
Fed. R. Evid. 901(a)..............................................13
Fed. R. Evid. 902(11).............................................16
Federal Rules of Criminal Procedure 12.1..........................19

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

At the onset of the COVID-19 global pandemic, defendant falsely claimed that he had developed the cure and treatment for COVID-19. Defendant filmed videos of himself holding the fake cure and treatment, posted those videos to his millions of social media followers, and sent those videos to potential investors.  But defendant did not stop there.  He built an elaborate investment fraud scheme around his fake cure and treatment.  Defendant created fake companies, lied about high profile individuals endorsing his product, lied about having a patent pending for his cure and treatment, and lied about how investments in his non-existent companies were risk-free and 100% guaranteed.  Defendant pitched his investments through text messages, phone calls, and emails, including by sending a detailed prospectus to potential investors.  He sent his bank account information to people, and he peppered potential investors with requests to send him hundreds of thousands of dollars.

18
19
20

For these acts, defendant is charged with participating in a scheme to defraud that includes eleven discrete counts of wire fraud, in violation of 18 U.S.C. § 1343.

21

## II.   STATUS OF CASE

22

### A.   Indictment

23
24
25

On June 12, 2020, a grand jury returned an indictment charging defendant with eleven counts of wire fraud, in violation of 18 U.S.C. § 1343.  (Dkt. 40.)

26

### B.   Discovery

27
28

The government has produced approximately 17,000 pages of discovery to defense counsel in twenty discovery productions.  The

produced discovery includes law enforcement reports, photographs, video recordings, audio recordings, and digital device evidence.  As of the date of this Trial Memorandum, defense counsel has produced reciprocal discovery that includes documents, photographs, and video recordings.

### C.   Trial

Trial Date: A jury trial in this matter is scheduled to begin on May 7, 2020, at 8:30 a.m., before this Court.

Estimated Time: The government anticipates that its case-in-chief will last approximately one to two days.

### D.   Defendant

Defendant is on bond.

### E.   Government Witnesses[1]

The government estimates that it will call at most eleven witnesses in its case-in-chief, including: (1) Federal Bureau of Investigation ("FBI") Special Agent ("SA") Madison MacDonald; (2) Inglewood Police Department ("IPD") Homicide Cold Case Investigator Sean Sterle;[2] (3) Drug Enforcement Administration ("DEA") Senior Forensic Chemist Monica S. Price; (4) FBI Forensic Examiner Andrew Y. Jaung; (5) FBI SA Kerrie Harney; (6) Dr. Suzanne Donovan; (7) Wayne Jeffries; (8) Ari Friedman; (9) Edward Carlos St. Mary; (10) Ralph Morgan; and (11) Earvin Johnson, Jr.[3]

### F.   Pretrial Motions

---

[1] The defense is finalizing their cross examinations;  however, the defense expects the cross examination of each witness to be just as long as the government's direct examination.

[2] Mr. Sterle was formerly employed as FBI UCE 4422.

[3] This represents the government's current witness list.  The government reserves the right to not call any of these witnesses or to call additional witnesses, if it deems necessary at trial.

2

The government has filed 14 pretrial motions and motions <u>in</u> <u>limine</u>, including: (1) motion <u>in limine</u> for admission of certified absence of public record from the United States Patent and Trademark Office (Dkt. 81); (2) motion <u>in limine</u> for admission of certified business records (Dkt. 82); (3) motion <u>in limine</u> for admission of certified business record of Google LLC (Dkt. 83); (4) motion <u>in</u> <u>limine</u> to admit certified business records of Facebook Inc. (Dkt. 84); (5) motion <u>in limine</u> to admit certified business records of AT&T (Dkt. 85); (6) motion for order for redaction of indictment (Dkt. 86); (7) motion <u>in limine</u> to exclude Dr. Ram Durisetti's testimony (Dkt. 157); (8) motion <u>in limine</u> to exclude Dr. Stephen Phillips's testimony (Dkt. 164); (9) motion <u>in limine</u> to admit evidence of and argument about defendant's requests for money transfers below the threshold reporting requirement (Dkt. 159); (10) motion <u>in limine</u> to preclude evidence of and reference to judgment in prior criminal case (Dkt. 160); (11) motion <u>in limine</u> to preclude the assertion of an insanity defense (Dkt. 162); (12) motion <u>in limine</u> for evidence of and reference to defendant's mental state (Dkt. 163); (13) motion <u>in</u> <u>limine</u> to preclude argument of and reference to jury nullification (Dkt. 166); and (14) motion <u>in limine</u> to preclude reference to or evidence that the alleged false representations are immaterial because no victim relied on the representations or lost money (Dkt. 167).

Defendant has filed seven pretrial motions and motions in limine: (1) motion <u>in limine</u> to preclude government's use of bank records (Dkt. 161); (2) motion for order to dismiss for selective prosecution (Dkt. 168); (3) motion to suppress digital devices (Dkt. 169); (4) motion to suppress evidence (Dkt. 172); (5) motion <u>in</u>

limine no. 2 to permit the presence of defense expert, Dr. Stephen
Phillips at trial pursuant to F.R.E. 615(3) (Dkt. 173); (6) motion to
exclude Dr. Suzanne Donovan (Dkt. 211); and (7) motion to exclude
other-act evidence noticed by the government (Dkt. 212).

As of the filing of this trial memorandum, the Court has
granted: (1) motion in limine for admission of certified absence of
public record from the United States Patent and Trademark Office
(Dkts. 81, 87); (2) motion in limine for admission of certified
business records (Dkts. 82, 87); (3) motion for order for redaction
of indictment (Dkt. 86) (orally on 4/22/24); (4) motion in limine to
preclude the assertion of an insanity defense (Dkt. 162) (orally on
4/22/24); (5) motion in limine for admission of certified business
record of Google LLC (Dkt. 83) (orally on 4/22/24); (6) motion in
limine to admit certified business records of Facebook Inc. (Dkt. 84)
(orally on 4/22/24); (7) motion in limine to admit certified business
records of AT&T (Dkt. 85) (orally on 4/22/24).

As of the filing of this trial memorandum, the Court has denied:
(1) motion for order to dismiss for selective prosecution (Dkts. 168,
230).

**III.  ELEMENTS OF THE CHARGED OFFENSES[4]**

The government must prove the following four elements to prove
wire fraud: (1) defendant knowingly devised a scheme or plan to
defraud, or a scheme or plan for obtaining money or property by means
of false or fraudulent pretenses, representations, or promises; (2)
the statements made as part of the scheme were material; that is,

---

[4] The defense objects to the Government's elements of the
charged offenses. The defense believes that the correct elements are
outlined in its proposed wire fraud jury instruction and exhibit
attached to its proposed jury verdict form.

they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and (4) defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.  Ninth Circuit Model Criminal Jury Instruction No. 15.35 (modified).

It is not necessary for the Government to prove that the defendant was actually successful in obtaining money or property by means of false or fraudulent pretenses, representations, or promises. United States v. Rude, 88 F.3d 1538, 1547 (9th Cir. 1996).  "It is not necessary for the Government to prove that anyone lost any money or property as a result of the scheme or plan." Id.  "An unsuccessful scheme to defraud is as illegal as a scheme or plan that is ultimately successful." Id.

The element of materiality is evaluated under an objective test that examines the intrinsic capabilities of the false statement itself.  United States v. Lindsey, 850 F.3d 1009, 1014 (9th Cir. 2017).  To be material a statement need only have the propensity or capacity to influence or affect a decision.  Id.  "A misrepresentation may be material without inducing any actual reliance.  What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose." United States v. Halbert, 640 F.2d 1000, 1009 (9th Cir. 1981)

The "interstate" requirement in 18 U.S.C. § 1343 is jurisdictional and not a substantive element of a wire fraud offense. United States v. Jinian, 725 F.3d 954, 965 (9th Cir. 2013).  The government is not required to prove a defendant knew his actions had

an "interstate nexus" to establish a violation of a statute requiring an "interstate nexus."  Id.  Each transmission by wire in interstate commerce to advance, further, or carry out the scheme may be a separate wire fraud count.  See United States v. Garlick, 240 F.3d 789, 792 (9th Cir. 2001) ("Insofar as we have never expressly held that each use of the wires constitutes a separate violation of 18 U.S.C. § 1343, we do so now.").

The Ninth Circuit recently issued a decision in United States v. Milheiser, --- F.4th ----, 2024 WL 1517377 at *7 (9th Cir. Apr. 9, 2024), which held that the charged false representation must "go to the nature of the bargain."  In other words, the false representation must be "about something essential to the bargain itself."  Id. at *6.  To start, Milheiser is distinguishable from this case because it involved the sale of commodities, not investments.  Id. at *1.  And "whether a misrepresentation goes to the nature of the bargain may depend on the specific transaction at issue."  Id. at *7.  With respect to investment fraud schemes, like this case, the court "rejected the idea that only direct misrepresentations of the price, quality, or advantages of the transaction are material."  Id. (cleaned up) (emphasis added).  Instead, materiality in an investment fraud scheme can be satisfied if "[d]efendant's misrepresentations were designed to give a false impression as to the size and nature of his own company as well as the businesses in which victims were being asked to invest."  Id. (quotation marks omitted).  "Because investments are by nature speculative, whether the investment advisor has a large and successful operation will inform the nature of the bargain -- it is relevant information about the value of the investor's purchase."  Id.

1   Nevertheless, in an abundance of caution, the government

2   believes it is prudent for the court to add a jury instruction that

3   reflects <u>Milheiser</u> and recommends that the Court add the following

4   underlined sentence to Ninth Circuit Model Criminal Jury

5   Instructions, No. 15.35 (2022 ed.): "the statements made as part of

6   the scheme were material; that is, they had a natural tendency to

7   influence, or were capable of influencing, a person to part with

8   money or property, and they directly or indirectly were designed to

9   deceive the person about the nature of the bargain at issue."

10  **IV.   STATEMENT OF FACTS[5]**

11  Defendant Keith Middlebrook is charged with multiple counts of

12  wire fraud in connection with his scheme to fraudulently obtain

13  investment funds for his purported "patent-pending" cure and

14  treatment for COVID-19.  (Indict. at 2-5.)  Specifically, defendant

15  told potential investors he had incorporated a company to develop and

16  market that cure and treatment, that high-profile individuals served

17  as directors or officers of his company, and that he had already

18  received multiple high-dollar investments in those companies.  (<u>Id.</u>

19

20      [5] The defense objects to the Government's factual basis and
    proposes the following: Defendant Keith Middlebrook is charged with
21  eleven counts of wire fraud. He is alleged to have created a
    fraudulent scheme to obtain investment funds for his purported cure
22  and treatment for COVID-19.  (Indict. at 2-5.)  Specifically, it is
    alleged that defendant knowingly made false representations to
23  potential investors that the cure and treatment were "patent-
    pending," that high-profile individuals served as directors or
24  officers of his company, and that he had already secured multiple
    high-dollar investments in the company. (Id. at 2-5.)  It is alleged
25  that the misrepresentations were material and that Defendant made
    these misrepresentations to potential investors through phone calls,
26  text messages, and emails.  (Id. at 3.)  It is further alleged that
    the defendant solicited money from those potential investors by
27  providing his bank account information and repeatedly asking them to
    wire-transfer money into bank accounts he controlled.  (Id. at 3-4.)
28  The defendant denies the allegations.

1    at 2-5.)   These representations to investors were lies.   (Id.)

2    Defendant fraudulently made these material misrepresentations to

3    potential investors through phone calls, text messages, and emails.

4    (Id. at 3.)   And he solicited money from those potential victim-

5    investors by providing his bank account information and repeatedly

6    asking them to wire-transfer money into bank accounts he controlled.

7    (Id. at 3-4.)

8    **V.   LEGAL AND EVIDENTIARY ISSUES[6]**

9        **A.   Authentication and Foundation**

10       Federal Rule of Evidence 901(a) provides that "[t]he requirement

11   of authentication or identification as a condition precedent to

12   admissibility is satisfied by evidence sufficient to support a

13   finding that the matter in question is what its proponent claims."

14   Under Rule 901(a), evidence should be admitted, despite any

15   challenge, once the government makes a prima facie showing of

16   authenticity or identification so "that a reasonable juror could find

17   in favor of authenticity or identification . . . [because] the

18   probative force of the evidence offered is, ultimately, an issue for

19   the jury."  United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th

20   Cir. 1991) (citations and internal quotation marks omitted); see also

21   United States v. Gadson, 763 F.3d 1189, 1204 (9th Cir. 2014).

22       **B.   Expert Opinion Testimony**

23       A qualified expert witness may provide opinion testimony on a

24   fact at issue if specialized knowledge will assist the trier of fact.

25   Fed. R. Evid. 702.   The Court has broad discretion to determine

26

27       [6] The defense reserves the right to object to the evidence
     presented at trial as long as it not precluded by the Court's ruling
28   on the parties' motions *in limine*. The defense's comments in this
     trial memo are not a waiver of that right.

whether to admit expert testimony.  <u>United States v. Andersson</u>, 813 F.2d 1450, 1458 (9th Cir. 1987).  Expert opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.

The government has timely designated and intends to call two experts at trial: (1) Dr. Suzanne Donovan[7] and (2) DEA Senior Forensic Chemist Monica S. Price.  The government has noticed their testimony as expert testimony, and has provided defense counsel summaries of their expected testimony.  Both are qualified as experts to testify and provide their expert opinions.

Dr. Donovan will testify about her experience treating COVID-19 patients in March 2020; that the words "cure" and "treatment" have a technical meaning; that in March 2020 there were no cures or FDA-approved treatments for COVID-19; and that Vitamin C, Niacinamide (Vitamin B3), Oxandrolone, Oxymetholone, and Vitamin D were not identified as treatments or cures for COVID-19 in March 2020.

Senior Forensic Chemist Price will testify regarding her lab's chain of custody practices, the methodology she employed to test certain pills recovered from defendant, and the results of her chemical analysis of said pills, including the identification of Oxandrolone, Oxymetholone, and Niacinamide.

The government should be permitted to introduce expert opinion testimony from both experts.  This testimony will assist the trier of fact in understanding the evidence and determining facts at issue.

**C.   Lay Law Enforcement Testimony**

---

[7] The defense objects to the testimony of Dr. Donovan as outlined in its motion *in limine*.

Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as long as the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." United States v. Pino-Noriega, 189 F.3d 1089, 1097 (9th Cir. 1999) (quotation marks omitted).  Lay opinion testimony by law enforcement officers is admissible and not necessarily expert testimony within the meaning of Rule 16(a)(1)(G).  See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995); see also United States v. Barragan, 871 F.3d 689, 703-704 (9th Cir. 2017); Gadson, 763 F.3d at 1209 ("[A]n investigator who has accumulated months or even years of experience with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying; indeed, it is those out-of-court experiences that make the witness's testimony helpful to the jury.").  Rule 16 notice is not required for lay witnesses.  United States v. Moreno, 243 F.3d 551 (9th Cir. 2000) ("Rule 16 notice was not required, however, because this testimony was properly admitted as the opinion of a lay witness.").  The remaining witnesses are testifying as lay witnesses.

The government intends to call FBI Forensic Examiner Andrew Y. Jaung, who will testify that he connected defendant's cellphone to a extraction device, used software to extract data into reports, and sent those other FBI agents who conducted a review of the phone data. The Ninth Circuit recently concluded that such testimony is not expert testimony.  United States v. Jimenez-Chaidez, 96 F.4th 1257, 1267 (9th Cir. 2024) (holding that agent's testimony about the extracted data from a cell phone was not expert opinion testimony,

1    and to the extent it was, it was based on his perception and not

2    specialized knowledge).

3         **D.   Defendant's Statements[8]**

4         The government intends to offer prior, audio-recorded statements

5    made by the defendant to an undercover FBI agent, text messages that

6    the defendant sent to potential investors, and videos that the

7    defendant distributed to potential investors and uploaded to his

8    social media platforms.  Under the Federal Rules of Evidence,

9    defendant's statements are admissible as a party admission if offered

10   against them.  Fed. R. Evid. 801(d)(2)(A); see also United States v.

11   Warren, 25 F.3d 890, 895 (9th Cir. 1994); Territory of Guam v. Ojeda,

12   758 F.2d 403, 408 (9th Cir. 1985) (explaining that a statement need

13   not be incriminating to be an admission).  Defendants may not,

14   however, elicit their own prior statements from a witness (including

15   themselves), because they are hearsay when offered by them.  Fed. R.

16   Evid. 801(d)(2); United States v. Ortega, 203 F.3d 675, 682 (9th Cir.

17   2000); United States v. Willis, 759 F.2d 1486, 1501 (11th Cir. 1985)

18   (defendant's exculpatory statements inadmissible when offered by

19   defense).  By eliciting some of defendant's prior statements, the

20   government does not thereby open the door to defendant to introduce

21   other out-of-court statements.

22        The only potential limitation on this principle is the "rule of

23   completeness," Fed. R. Evid. 106, which has been applied by some

24   courts to require that all of a particular prior statement by

25

26   _____

          [8] While the defense acknowledges that Mr. Middlebrook's
27   statements are admissible as a party admission, the statements of the
     other individuals heard on the audio recordings are not and are
28   inadmissible hearsay.

defendant be admitted where necessary to explain the admitted portion of the statement, to place it in context, or to avoid misleading the jury. United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). "The completeness doctrine does not, however, require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." Id. at 84. The rule of completeness also does not apply to conversations that are not written or recorded. See United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996).

### E.   Cross-Examination of Defendant

The government is unaware whether defendant intends to testify at trial. If defendant does testify, the government should be permitted to fully cross-examine him. A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony. See, e.g., Ohler v. United States, 529 U.S. 753, 759 (2000) ("It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination."). A defendant has no right to avoid cross-examination on matters that call into question his claim of innocence. United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). The scope of a defendant's waiver is co-extensive with the scope of relevant cross-examination. United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver. Rather, the inquiry is whether 'the government's questions are reasonably related' to the

1  subjects covered by the defendant's testimony.").

2  **F.  Recordings, Photographic Evidence, and Transcripts[9]**

3  The government intends to introduce video and audio recordings

4  of defendant's statements, and photographs.  A recording is

5  admissible upon a showing that it is "accurate, authentic, and

6  generally trustworthy."  United States v. King, 587 F.2d 956, 961

7  (9th Cir. 1978).  The government need not necessarily call a specific

8  witness to admit a particular video or photograph.  Rule 901(a)

9  simply requires that a proponent of evidence make a prima facie

10  showing of authenticity so that a reasonable juror could find "that

11  the item is what the proponent claims it is."  Fed. R. Evid. 901(a).

12  Similarly, photographs are generally admissible as evidence.  See

13  United States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977)

14  (photographs of crime scene admissible).  Photographs should be

15  admitted so long as they fairly and accurately represent the event or

16  object in question.  United States v. Oaxaca, 569 F.2d 518, 525 (9th

17  Cir. 1978).  Photographs may be authenticated by a witness who

18  "identif[ies] the scene itself [in the photograph] and its

19  coordinates in time and place."  See Lucero v. Stewart, 892 F.2d 52,

20  55 (9th Cir. 1989) (internal quotation marks omitted).

21  Here, the government has identified certain video and audio

22  recordings that it intends to introduce at trial.  These include

23  videos and audio recordings of Investigator Sean Sterle speaking and

24  meeting with defendant. These recordings may be authenticated by

---

26  [9] While the defense acknowledges that Mr. Middlebrook's
27  statements are admissible as a party admission, the statements of the
   other individuals heard on the audio recordings are not and are
28  inadmissible hearsay.

Investigator Sterle who was present for the recorded conversations. In addition, the recordings may be authenticated by Special Agent MacDonald who has repeatedly reviewed the video and audio recordings taken in this case. The government has also identified video recordings that the defendant sent to potential investors and uploaded to his social media platforms. The recordings that the defendant sent to potential investors can be authenticated by the potential investors who received the videos. Furthermore, Special Agent MacDonald can authenticate both the video recordings that the defendant sent to potential investors and the videos that the defendant uploaded to his social media platforms because she has repeatedly reviewed the videos. These witnesses have personal knowledge and familiarity of the items depicted on the audio and video recordings and thus can authenticate them.

In addition, the government has prepared transcripts to serve as an aid to the jury while listening to those recordings. Transcripts will be displayed on the monitors synced with the playing audio/video. The government does not intend to provide physical transcripts to the jury. The government has provided all of the current transcripts it intends to present at trial to defendant.[10] The government has currently received no objections to its proposed transcripts. Because the conversations occurred entirely in English, the underlying recordings, and not the transcripts, constitute the

---

[10] To the extent, the government needs to prepare additional transcripts, it will do so immediately and disclose them to the defense. And while defendant has not identified any objections to the transcripts, the government will continue to meet and confer with the defense to ensure the transcripts are accurate when presented to the jury.

admissible evidence.  See United States v. Turner, 528 F.2d 143, 167 (9th Cir. 1975).

### G.   Character Evidence[11]

Defense counsel has not indicated whether defendant will be calling character witnesses to testify on his behalf.  Nevertheless, the Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to result in confusion of the issues and prejudice the jury.  Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  Id. at 486.  Federal Rule of Evidence 403 also "gives the district court broad discretion in excluding cumulative evidence."  See Hamling v. United States, 418 U.S. 87, 127 (1974).  Federal Rule of Evidence 404(a) governs the admissibility of character evidence.  Rule 404(a) permits a defendant

---

[11] The defense objects to the government eliciting character evidence from the potential investors as it would run afoul to its representation to the Court that it will not address the 2014 federal case and/or Mr. Middlebrook's credit-cleaning business in its case and chief. The government has indicated it may introduce character evidence regarding Mr. Middlebrook's reputation for truthful or untruthfulness pursuant to Rule 608. However, doing so runs afoul to the government's indication that it "will not offer during direct examination of tis witnesses any evidence of the defendant's 'credit cleaning' scheme as charged in the Southern District of California in *United States v. Keith Lawrence Middlebrook*, Case No. 3:14-cr-2950-H (the '2014 Case')." Based on the discovery produced by the government, the defense believes that the character evidence elicited from the potential investors will be intrinsically linked to the 2014 case. For example, according to an FBI 302 report produced in discovery (produced at USAO_00016840), alleged potential investor W.J. stated that he "did not trust Middlebrook as a businessman due to his previous problems and run ins with the FBI and the AUSA." Therefore, allowing the government to elicit character evidence from the potential investors would preclude the defense from challenging the reputation and opinion evidence without opening the door to the 2014 case.

to introduce evidence only of a "pertinent" trait of character.  A non-pertinent or misleading character trait is not admissible.  See United States v. Santana-Camacho, 931 F.2d 966, 967-68 (1st Cir. 1991) (testimony of defendant's daughter purportedly showing that defendant was a good family man inadmissible character evidence inasmuch as such character traits were not pertinent to charged crime).  As a general rule, character witnesses called by defendant may not testify about specific acts demonstrating a particular trait or other information acquired only by personal observation and interaction with the defendant; the witness must summarize the reputation or opinion of the defendant as known in the community. Fed. R. Evid. 405(a); Michelson, 335 U.S. at 477; United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989).  On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of defendant's past conduct relevant to the character trait at issue.  Fed. R. Evid. 405(a).  For example, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests. Michelson, 335 U.S. at 479, 481 n.18. The only prerequisites are that: (1) there be a good-faith basis that the incidents inquired about occurred; and (2) the incidents are relevant to the character trait at issue.  United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981); United States v. Bright, 588 F.2d 504, 512 (5th Cir. 1979).

The government may, however, introduce character witnesses who can testify as to defendants' character for truthfulness or untruthfulness in the form of reputation or opinion evidence.  Fed. R. Evid. 608(a).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**H.    Business Records**

Federal Rule of Evidence 902(11) provides that certified domestic records of regularly conducted activities can be self-authenticating and may therefore be admitted under Rule 803(6), provided certain requirements are met.  See Fed. R. Evid. 902(11). This Court has already granted several of the government's motions in limine to admit certain business records, subject to a determination of relevance.  (See, supra Section II.G.)  The government reserves the right to introduce additional documents, if necessary, through the business records exception.

**I.    Use of Exhibits During Opening Statement**

Exhibits may be used by the government in the opening statement, and so long as the opening statement "avoids references to matters that cannot be proved or would be inadmissible, there can be no error, much less prejudicial error."  United States v. De Peri, 778 F.2d 963, 979 (3d Cir. 1985); see also United States v. Rubino, 431 F.2d 284, 290 (6th Cir. 1970).  The government intends to notify defendant regarding which, if any, exhibits it intends to use during its opening statement, so long as defendant agrees to do so as well. The government expects to meet and confer with defendant on an appropriate deadline to identify such documents.

**J.    Summary Witnesses**

This case involves a large number of documents, in particular, financial records.  To assist in the jury's understanding of the case, the government intends to offer into evidence charts and summaries of those materials under Federal Rule of Evidence 1006. The government may have summary witnesses testify about, and use these charts to summarize, evidence that has already been admitted.

The Court and jury are entitled to have a witness "organize and evaluate evidence [that] is factually complex and fragmentally revealed."  United States v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (DEA agent's testimony regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence, as it helped jury organize and evaluate evidence; summary charts properly admitted); United States v. Lemire, 720 F.2d 1327, 1348 (D.C. Cir. 1983) ("[J]ust as an expert can assist a jury by imparting special knowledge that helps the jury to understand technical evidence, a non-expert summary witness can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial.").

A summary witness may rely on the analysis of others where the summary witness has sufficient experience to judge another person's work and incorporate as his or her own the fact of the witness's expertise.  The use of other persons in the preparation of summary evidence goes to its weight, not its admissibility.  See United States v. Soulard, 730 F.2d 1292, 1299 (9th Cir. 1984); Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co., 466 F.2d 722, 727 (7th Cir. 1972) ("It is not necessary . . . that every person who assisted in the preparation of the original records or the summaries be brought to the witness stand.").

### K.  Calling Witnesses For Impeachment

Federal Rule of Evidence 607 provides that "[a]ny party, including the party that called the witness, may attack the witness's credibility."  Yet, a party may not call a witness in its case-in-chief as a pretext for impeaching that witness' credibility and thus

18

present to the jury evidence that would be inadmissible but for the impeachment.  See United States v. Johnson, 802 F.2d 1459, 1466 (D.C. Cir. 1986) ("Impeachment evidence is to be used solely for the purpose of impeachment, and it may not be used as a mere subterfuge to get before the jury evidence not otherwise admissible." (internal quotations omitted); see also United States v. Gomez-Gallardo, 915 F.2d 553, 555 (9th Cir. 1990) (holding that the government improperly called a witness "for the primary purpose of impeaching him"); United States v. Crouch, 731 F.2d 621, 623 (9th Cir. 1984) ("[T]he maximum legitimate effect of the impeaching testimony can never be more than the cancellation of the adverse answer by which the party is surprised.") (internal quotations omitted).

The exception to Rule 607 authorizes the Court to preclude the defense from calling a witness for the purpose of impeaching him, or impeaching its own witnesses.  See, e.g., United States v. Libby, 475 F. Supp. 2d 73, 80-84 (D.D.C. 2007) (barring the defense from impeaching its witness on hearsay statements); see also United States v. Lattin, 108 F.3d 1374 (4th Cir. 1997)(affirming district court order prohibiting defense from calling a witness on the ground that, "[w]hile a party may impeach its own witness, the district court did not abuse its discretion here because the Government did not call [the witness] to testify") (citation omitted); see also Beasly v. United States, 218 F.2d 366, 408 (D.C. Cir. 1955) ("The defense may not call a witness who has not testified merely to attempt to discredit him in the course of eliciting adverse testimony[.]").

Here the defense has subpoenaed three FBI SAs: (1) Madison MacDonald; (2) Jamila McKnight; (3) Lynn Zellhart. The defense should

1    not be permitted to call these witnesses for the purpose of

2    impeaching them.

### L.   Affirmative Defenses

4         Defendants have not given notice of their intent to rely on any

5    defense of entrapment, mental incapacity, alibi, or any other

6    affirmative defense, despite the government's request for such notice

7    of intent.  Therefore, to the extent defendants may attempt to rely

8    on such a defense, the government reserves the right to object and to

9    move to preclude defendants from asserting such a defense.

### M.   Jury Nullification

11        The government reserves the right to object to any evidence

12   and/or argument relating to any possible jury nullification defense,

13   including concerning punishment or monetary loss.  A defendant has no

14   right to present evidence relevant only to such a defense.  United

15   States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992); Zal v. Steppe,

16   968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring) ("[N]either

17   a defendant nor his attorney has a right to present to a jury

18   evidence that is irrelevant to a legal defense to, or an element of,

19   the crime charged." (emphasis in original)).

### N.   Reciprocal Discovery

21        Rule 16 requires defendant to produce to the government three

22   categories of materials that he intends to introduce as evidence at

23   trial: (1) documents and tangible objects; (2) reports of any

24   examinations or tests; and (3) expert witness disclosures.  Fed. R.

25   Crim. P. 16(b)(1).  Rule 16 imposes on defendants a continuing duty

26   to disclose these categories of materials.  Fed. R. Crim. P. 16(c).

27   In those circumstances where a party fails to produce discovery as

28   required by Rule 16, the rule empowers the district court to

"prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C), (D).

Defendant has produced some reciprocal discovery. To the extent that there exists reciprocal discovery to which the government is entitled under Federal Rules of Criminal Procedure 12.1, 12.2, 16(b), or 26.2 that defendant has not produced, the government reserves the right to seek to have such materials excluded at trial. See United States v. Young, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).

## VI.   CONCLUSION

The government respectfully reserves the right to supplement or modify this Trial Memorandum as may be appropriate.