E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KENNETH R. CARBAJAL (Cal. Bar No. 338079)
JOSEPH S. GUZMAN (Cal. Bar No. 310493)
Assistant United States Attorney
Violent and Organized Crime Section
General Crimes Section
     1300/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3172/2438
     Facsimile: (213) 894-0141
     E-mail:    kenneth.carbajal@usdoj.gov
                joseph.guzman2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-cr-00229-DSF |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT KEITH LAWRENCE MIDDLEBROOK |
| v. | |
| KEITH LAWRENCE MIDDLEBROOK, | Sentencing Date: 12/9/2024 |
| Defendant. | Sentencing Time: 8:30 a.m. |
| | Courtroom: Courtroom of the Hon. Dale S. Fischer |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kenneth R. Carbajal and Joseph S. Guzman, hereby files its Sentencing Position for Defendant Keith Lawrence Middlebrook.

///

The government's Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit. The government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

Dated: November 25, 2024	Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


    /s/
KENNETH R. CARBAJAL
JOSEPH S. GUZMAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.   INTRODUCTION....................................................1

II.  STATEMENT OF FACTS..............................................1

    A.   Defendant Developed And Engaged In A Scheme To Defraud Investors During The COVID-19 Global Pandemic.............1

    B.   Defendant Solicited $4,400,000 In Investments From At Least Five Potential Investors...........................2

    C.   Defendant Committed Perjury During Trial..................3

III. PROBATION'S SENTENCING GUIDELINES CALCULATIONS.................4

IV.  GOVERNMENT'S SENTENCING GUIDELINES CALCULATIONS................5

    A.   The Court Should Apply An Additional Two-Level Enhancement For Obstruction Of Justice Pursuant To U.S.S.G. § 3C1.1..........................................5

        1.   Defendant Gave False Testimony Regarding Magic Johnson.............................................6

        2.   Defendant's False Testimony Was On A Material Matter.............................................7

        3.   Defendant Told The Lies With Willful Intent..........8

V.   GOVERNMENT RECOMMENDS A NINETY-EIGHT MONTHS' SENTENCE..........9

    A.   Nature and Circumstances of the Offense...................9

    B.   History and Characteristics of Defendant..................9

    C.   Need for the Sentence to Reflect the Offenses' Seriousness, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public...............................................10

    D.   The Need to Avoid Unwarranted Disparities................11

VI.  CONCLUSION....................................................12

**TABLE OF AUTHORITIES**

**FEDERAL CASES:**                                                    **PAGE(S)**

Gall v. United States,
  552 U.S. 38 (2007) ............................................... 11

United States v. Castro-Ponce,
  770 F.3d 819 (9th Cir. 2014) ...................................... 6

United States v. Dunnigan,
  507 U.S. 87 (1993) ................................................ 6

**FEDERAL STATUTES:**

18 U.S.C. § 1343................................................1, 4
18 U.S.C. § 3553(a)..........................................1, 9, 11

**FEDERAL RULES:**

U.S.S.G. § 2B1.1(a)(1).............................................. 4

U.S.S.G. § 2B1.1(b)(1)(A)........................................... 8

U.S.S.G. § 3C1.1........................................... 1, 5, 6, 7

U.S.S.G. § 4C1.1.................................................... 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In March 2020, defendant committed eleven counts of wire fraud, in violation of 18 U.S.C. § 1343.  On May 7, 2024, defendant proceeded to trial.  (Dkt. 260.)  After deliberating for less than one day, the jury returned a verdict of guilty on all counts on May 10, 2024.  (Dkt. 263.)

On October 28, 2024, U.S. Pretrial and Probation Services issued a Presentence Report and a Recommendation Letter.  (Dkts. 303-304.) There, Probation calculated defendant's Sentencing Guidelines range to be 70 to 87 months' imprisonment, based on an offense level of 27 and a criminal history category of I.  (Dkt. 304 at 4.)  Probation recommends a sentence of 70 months' imprisonment and a fine of $25,000. (Dkt. 303 at 1.)

The government agrees with Probation's calculations but believes the Court should apply an additional two-level enhancement for obstruction of justice based upon perjury, for a total offense level of 29 and a Sentencing Guidelines range of 87-108 months' imprisonment.  Based on those calculations, the government respectfully recommends that the Court sentence defendant to a mid-range Guidelines sentence of 98 months' imprisonment and a $25,000 fine, followed by a three-year term of supervised release.  Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

**II.   STATEMENT OF FACTS**

    **A.   Defendant Developed And Engaged In A Scheme To Defraud Investors During The COVID-19 Global Pandemic**

At the onset of the COVID-19 global pandemic, defendant falsely

1

claimed that he had developed the cure and treatment for COVID-19. (PSR ¶¶ 10-11.)  Defendant filmed videos of himself holding the fake cure and treatment, posted those videos to his millions of social media followers, and sent those videos to potential investors.  (Id. ¶¶ 12, 50.)  Defendant built an elaborate investment fraud scheme around his fake cure and treatment.  (Id. ¶¶ 13-14.)  Defendant created fake companies, lied about high profile individuals endorsing his product, lied about having a patent pending for his cure and treatment, and lied about how investments in his non-existent companies were risk free and 100% guaranteed.  (Id.)  Defendant pitched his investments through text messages, phone calls, and emails, including by sending a detailed prospectus to prospective investors in which he claimed that QP20 was incorporated on March 15, 2020 and that National Basketball Association ("NBA") Hall of Famer Earvin "Magic" Johnson was a director and officer of the company. (Id. ¶ 52.)  Defendant sent his bank account information to those prospective investors, and he peppered them with requests to send him money, all in an effort to defraud potential investors of millions of dollars.  (Id. ¶ 13.)

**B.   Defendant Solicited $4,400,000 In Investments From At Least Five Potential Investors**

On May 10, 2024, a jury convicted defendant of 11 counts of wire fraud.  (Dkt. 263.)  In executing his scheme, defendant solicited investments from at least five potential investors.  In communications with an undercover Federal Bureau of Investigation ("FBI") Special Agent (the "UCE"), the defendant solicited and arranged a meeting to collect a $400,000 investment in his fictitious companies and products.  (PSR ¶ 49; Dkt. 294, Trial Exs. 123-125;

2

Dkt. 285, Def. Ex. A, May 7, 2024, Trial Tr. at 149:3-13.)

Defendant also sent text messages to at least four individuals: 1) W.J.; 2) A.F.; 3) R.M.; and 4) E.S. in which he solicited investments of at least $1,000,000 from each of the four individuals. (PSR ¶ 49; Dkt. 294, Trial Exhibits 134-137 (Text Messages to W.J., A.F., R.M., and E.S.: "Investors who come in at ground level with say $1M will parachute with $200M - $300M. Conservative Minimum. Plus retain Stock Shares."))

### C. Defendant Committed Perjury During Trial

Furthermore, defendant testified at trial and gave false testimony on a material matter with willful intent. To convict defendant of wire fraud, the government was required to prove that defendant participated in a scheme to defraud. (Dkt. 267 (Jury Instructions) at 18-19.) One of the false statements that the government alleged the defendant made as part of that scheme was that Magic Johnson was a director and/or officer of QC20. (Id. at 18.) At trial, the defendant falsely claimed that he had met Magic Johnson hundreds of times. (Dkt. 285, Def. Ex. B, May 8, 2024, Trial Tr. at 197:15-16 (Q: "And did you ever meet Earvin Magic Johnson?" A: "Well over a hundred times in the last 25 years.") Defendant falsely claimed that he had extensive conversations with Magic Johnson about business, COVID-19, and defendant's fake cure and prevention pill. (Id. at 197:22-23 ("So we got him on the phone, and we all talked for like 20 minutes. He [Magic Johnson] goes Keith, we gotta hook up, meet up, and I said great."); Id. at 202:10-15 (Defendant falsely testified that he and Magic Johnson talked on the phone over an hour and went over the framework of his fake COVID-19 cure and prevention pill.); Id. at 202:25-203:12 (Defendant falsely testified that Magic

3

Johnson said he was enthusiastic about working with defendant and that they planned on having a meeting.); Id. at 218:23-25 (Defendant falsely testified that he discussed his fake COVID-19 cure and prevention pill with Magic Johnson.))

Meanwhile, Magic Johnson testified at trial regarding defendant's false claims. Before doing so, he explained that he cares about his community and seeks to balance making a profit and doing good when evaluating potential investments. (Id. at 13:11-21:3.) He also discussed how valuable his endorsement is, which he referred to as a "Q rating" -- a rating that people use to evaluate a celebrities' appeal -- and how his rating is usually the second highest in California and approximately ninety percent nationwide. (Id. at 20:13-21.) When questioned about defendant and his fake companies, Magic Johnson testified that he has never supported, invested in, or been an officer or a member of the board of directors of, Quantum Prevention CV, Inc. (Id. at 21:7-24:12.) Magic Johnson also testified that he did not know defendant and had never committed to working with him. (Id.)

**III. PROBATION'S SENTENCING GUIDELINES CALCULATIONS**

In October 2024, Probation issued a PSR and calculated a total offense level of 27. (PSR ¶ 61.) Specifically, Probation determined that defendant's base offense level was 7, because the defendant violated 18 U.S.C. § 1343, pursuant to U.S.S.G. § 2B1.1(a)(1). (Id. ¶ 48; see also Dkt. 303.) Probation also determined that an 18-level enhancement applied because the total amount of the loss was $4,400,000. (PSR ¶ 49.) Probation determined that an additional two-level enhancement applied because the defendant committed the offense through mass marketing, specifically by posting on social

4

media about his fake cure and prevention pill. (Id. ¶ 50.) Probation also determined that a two-level enhancement applied because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting the sophisticated means. (Id. ¶ 51.)

Lastly, Probation determined that a two-level reduction applied, pursuant to U.S.S.G. § 4C1.1, because defendant is a zero-point offender. (Id. ¶¶ 59-60.) Based on these calculations, Probation determined that the total offense level is 27. (Id. ¶ 61.)

Probation also determined that defendant has a criminal history score of 0. (Id. ¶ 70.) Based on this, Probation determined defendant falls within criminal history category I. (Id.)

With a total offense level of 27 and criminal history category I, Probation determined that the advisory Sentencing Guidelines range is 70 to 87 months, a fine between $25,000-$250,000, and a term of supervised release of one to three years. (Id. ¶¶ 104, 107, 113.) Probation recommends the Court sentence defendant to a low-end term of 70 months imprisonment and a fine of $25,000, followed by a three-year term of supervised release. (Dkt. 303 at 1-2.)

**IV. GOVERNMENT'S SENTENCING GUIDELINES CALCULATIONS**

The government agrees with Probation that the total offense level is at least 27, however, the government believes the Court should apply an additional two-level enhancement for obstruction of justice based upon perjury, for a total offense level of 29.

**A. The Court Should Apply An Additional Two-Level Enhancement For Obstruction Of Justice Pursuant To U.S.S.G. § 3C1.1**

Defendant obstructed and impeded the administration of justice during the trial. He repeatedly attempted to obstruct justice during

5

his testimony in order to conceal his crimes and to convince the jury that his lies, namely that Magic Johnson was on his board of directors, were true. In doing so, he repeatedly lied under oath during his testimony surrounding his scheme to defraud and the role that Magic Johnson played in that scheme. This is sufficient to trigger the §3C1.1 obstruction enhancement. See U.S.S.G. §3C1.1, Application Note 4(B) (obstruction of justice includes "committing, suborning, or attempting to suborn perjury")

If the Court imposes an obstruction of justice enhancement based upon perjury, it must make express findings that (1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent. The Supreme Court has instructed that a defendant may receive a § 3C1.1 enhancement based upon perjury at trial, but district courts must be careful to avoid chilling the right to testify—after all, "an accused may give inaccurate testimony due to confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94-95 (1993). In light of those concerns, the Ninth Circuit has held that a district court must make "express findings on all three prongs necessary for perjury to amount to obstruction of justice" under § 3C1.1. United States v. Castro-Ponce, 770 F.3d 819, 822 (9th Cir. 2014) (emphasis added).

Here, defendant's testimony constitutes perjury and satisfies all three prongs.

### 1. Defendant Gave False Testimony Regarding Magic Johnson

Magic Johnson testified that he never supported, invested in, or had been an officer or a member of the board of directors of, Quantum Prevention CV, Inc. See supra at II.C. Magic Johnson also testified that he did not know defendant and had never committed to working

6

with him.  (Id.)

Defendant testified at trial and directly contradicted Mr. Johnson's testimony.  During his sworn testimony, defendant falsely claimed that he had met Magic Johnson hundreds of times, that he had extensive conversations with Magic Johnson about business, COVID-19, and defendant's fake cure and prevention pill, and that they planned on having a meeting to continue their business discussions.  (Id.)

Because Magic Johnson's testimony was true, defendant's testimony must be false.  It cannot be the case that Mr. Johnson did not know defendant, did not commit to working with him, and had never had a role in Quantum Prevention CV, Inc., as Mr. Johnson testified, but also had met defendant hundreds of times, had extensive conversations with defendant about defendant's COVID-19 cure and prevention pill and planned to meet with defendant, as defendant testified, because those statements directly contradict each other. Mr. Johnson testified truthfully and reliably.  Defendant's testimony was deliberate, there was no indication that defendant's inaccurate testimony was due to confusion, mistake, or faulty memory.  Defendant was confident in his answers and appeared to have little trouble recalling details throughout his testimony.  Therefore, defendant's testimony was false.

        2.   <u>Defendant's False Testimony Was On A Material Matter</u>

To convict defendant of wire fraud, the government was required to prove that defendant participated in a scheme to defraud.  (Dkt. 267 (Jury Instructions) at 18-19.)  One of the false statements that the government alleged the defendant made as part of that scheme was that Magic Johnson was a director and/or officer of QC20.  (Id. at 18.)  U.S.S.G. §3C1.1, Application Note 6 defines material evidence

7

as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination."

Defendant's false testimony regarding his relationship with Magic Johnson and Mr. Johnson's interest in working with defendant on his COVID-19 cure and prevention pill constitutes material evidence under U.S.S.G. §3C1.1. The issue under determination affected by this specific testimony is whether Magic Johnson was a director and/or officer of QC20. If the trial jury believed defendant's story, it would tend to influence or affect the jury's determination of whether Magic Johnson was a director and/or officer of QC20, as a rational juror would be more likely to believe Magic Johnson was a director and/or officer if it was true that defendant and Magic Johnson had long conversations, had met hundreds of times, and Mr. Johnson had expressed an interest in working with defendant – as defendant stated in his sworn testimony. See supra at II.C. Therefore, defendant's false testimony was on a material matter.

### 3. Defendant Told The Lies With Willful Intent

The reasons for defendant's perjury was clear: the jury would not believe that Magic Johnson was a director and/or officer of QC20 after Mr. Johnson's testimony. Defendant's testimony regarding his conversations and relationship with Mr. Johnson was thus intended to deceive the jury, sway them from believing Magic Johnson, and instead convince them that defendant and Mr. Johnson had a relationship in an effort to convince the jury that Magic Johnson was actually a director and/or officer of QC20. Thus, defendant lied during his testimony with willful intent.

8

With a total offense level of 29 and a criminal history category I, the advisory Sentencing Guidelines range is 87-108 months' imprisonment.

## V. GOVERNMENT RECOMMENDS A NINETY-EIGHT MONTHS' SENTENCE

The government recommends a mid-level Guidelines sentence of 98 months' imprisonment and a fine of $25,000, followed by a three-year period of supervised release. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

The nature and circumstances of defendant's offense supports a sentence of 98 months' imprisonment. In mitigation, no investor lost money because nobody transferred funds to one of defendant's bank accounts. (PSR ¶¶ 39-43.) However, the Sentencing Guidelines calculate loss by considering the greater of actual loss or intended loss. (U.S.S.G. § 2B1.1(b)(1)(A).) Here, the greater of the two loss amounts is intended loss for a total of $4,400,000, which is a significant amount. (PSR ¶ 49.) In aggravation, defendant's crime was serious, defendant engaged in an elaborate scheme to defraud investors of millions of dollars during the beginning of the COVID-19 pandemic, a particularly vulnerable time in our nation's history. (Id. ¶¶ 10-11.)

For that reason, a mid-range sentence should be imposed as it appropriately balances the aggravating and mitigating circumstances in this case.

### B. History and Characteristics of Defendant

Defendant's history and characteristics also warrant the government's recommended sentence. In mitigation, defendant has no

9

criminal history points, although he has sustained four driving-related convictions. (Id. ¶¶ 66-70.)  In aggravation, however, defendant has a history of engaging in elaborate schemes to defraud potential clients. (Id. ¶ 77.)  According to an indictment that was dismissed in October 2016, between August 2013 and October 2014 defendant devised a scheme to defraud clients by promising to raise their credit scores even though he could not legally accept money for his services before completing them. (Id.)  Defendant also created fraudulent documents and used forged seals from government agencies as part of his scheme. (Id.)

Thus, on balance, defendant's history and characteristics support the government's recommended mid-range Guidelines sentence.

### C. Need for the Sentence to Reflect the Offenses' Seriousness, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public

The sentence must satisfy the need to punish defendant, as well as society's need to reflect the seriousness of the offense; promote respect for the law; provide just punishment; afford adequate deterrence; and protect the public.

Defendant has shown disdain for the criminal justice system, a lack of remorse for his actions, and a lack of respect for the law, as evidenced by a video defendant posted to his Instagram account, "keithmiddlebrook1," on May 10, 2024[1] – the same day the jury returned a guilty verdict on all 11 counts of wire fraud. (See Exhibit A (Video posted to Instagram of defendant discussing the jury

---

[1] Although defendant states the date as March 10, 2024, in the video, the date stamp on the video is May 10.  Furthermore, in the caption defendant wrote "I meant May in the Video," indicating that he misspoke when he stated it was March 10, 2024, and that it was actually May 10, 2024.

10

verdict).)  In the video, defendant states:

> "Anyway, a group of people convinced a brain dead dumb stupid idiot liberal group of people of things that weren't true about a company that never received or accepted a dollar. In fact, they declined all funds as they were building the company. This group of people convinced these dumb stupid liberal idiots of lies. It was - to anybody it would be shocking. So, to let everybody know, don't believe the lies in the articles on the internet. Everything is being taken care of at the Trump level, the higher level, the Trump level. To have it taken care of." (Id.)

Here the defendant is referring to the government presenting its case to the trial jury and the trial jury finding the defendant guilty.  By referring to the trial jury as "brain dead," "dumb," "stupid," and "idiot[s]" the defendant is showing a lack of respect for the law, for the jurors that served on this trial, and for the long history of a trial by jury that has served as the bedrock of our nation's criminal justice system.

The government's recommended fine and sentence at the mid-range of the applicable Guidelines range will deter defendant specifically and others generally who might be inclined to perpetrate a similar crime.  Finally, a three-year term of supervised release will provide an additional layer of deterrence and protection to the community, and will help defendant transition back into society upon release.

### D. The Need to Avoid Unwarranted Disparities

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range.  See Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  Here, under the correctly calculated Guidelines range,

11

other defendants "with similar records who have been found guilty of similar conduct" as defendant can expect a prison sentence between 87- and 108-months' imprisonment. See U.S.S.G. § 5A (Sentencing Table). Consequently, the government's recommended sentence, which is at the mid-range of the guidelines, avoids an unwarranted disparity with similarly situated defendants.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 98 months' imprisonment, followed by a three-year period of supervised release; a $100 special assessment; and a $25,000 fine.